**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| MINGBO CAI, Individually and On Behalf of All Others Similarly Situation,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>SWITCH, INC., *et al.*,<br><br>　　　　　　　　Defendants. | 2:18-cv-01471-JCM-VCF<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO STRIKE [ECF NO. 63] |

　　Before the Court is Defendants Switch, Inc., Rob Roy, Gabe Nacht, Zareh Sarrafian, Donald Snyder, Tom Thomas, and Bryan Wolf's (collectively, "Switch Defendants") Motion to Strike Allegations from Plaintiff's Amended Class Action Complaint for Violation of the Securities Laws Pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 63).[1] For the reasons stated below, the Court recommends that the Switch Defendants' motion be granted in part and denied in part.

## BACKGROUND

　　In the amended complaint, Lead Plaintiff Mingbo Cai alleges that the Switch Defendants violated Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o). (ECF No. 58 at 31-33). Under 15 U.S.C. § 77k, a person may bring suit if the registration statement issued in connection with a public security offering "contained an untrue statement of a material fact or omitted to state a material fact required to be stated." "Every person who…controls any person liable under sections 77k or 77l of this title, shall also be liable…unless the controlling person had no knowledge of or reasonable ground to

---

[1] The Underwriter Defendants filed joinders to the motion and the reply. (ECF Nos. 66, 87). The joinders contain no substantive analysis.

1

believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." 15 U.S.C. § 77o. Cai alleges that the Switch Defendants' registration statement issued for its initial public offering omitted or misrepresented information regarding, among other things, Switch's "new sales strategy that focused on selling hybrid cloud solutions in a manner that presented a significant risk of lengthening the Company's sales cycles" and its "ability to replicate the success of its Las Vegas facility at its other new facilities." (ECF No. 58 at 24-27).

The Switch Defendants now move to strike Paragraphs 45, 46, 56, and 65 and Footnotes 4 and 7 of the amended complaint. (ECF No. 63). The Switch Defendants argue that these portions are immaterial, impertinent, and scandalous because they deal with comments made outside the registration statement, alleged fraudulent motives Switch personnel had for making the misrepresentations and omissions, and circumstances arising after the registration statement was issued. (*Id.* at 5-10). In opposition, Cai argues that the challenged paragraphs and footnotes relate to the materiality and causation for the alleged misrepresentations and omissions, the control certain actors had over Switch, and the context of the entire case. (ECF No. 79 at 5-14). Cai also asserts that the Switch Defendants have failed to show that they would be prejudiced by allowing the challenged paragraphs and footnotes to remain in the amended complaint. (*Id.*).

## DISCUSSION

Federal Rule of Civil Procedure 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)); *see also* 2 James Wm. Moore,

*Moore's Federal Practice*, § 12.37[3], 128-29 (3d ed. 2017) ("To prevail on this motion to strike, the movant must clearly show that the challenged matter 'has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants.'").

Whether to grant a motion to strike lies within the discretion of the district court. *Whittlestone, Inc.*, 618 F.3d at 973. "[F]ederal courts generally disfavor motions to strike." *D.E. Shaw Laminar Portfolios, LLC*, 570 F.Supp.2d at 1271 (quoting *Germaine Music v. Universal Songs of Polygram,* 275 F.Supp.2d 1288, 1300 (D. Nev. 2003)). "[C]ourts often require a showing of prejudice by the moving party before granting the requested relief." *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) (internal quotation omitted).

The Court finds that Paragraphs 45 (including Footnote 3, which defines "REIT") and 46 are immaterial to Cai's claims. These paragraphs allege that,

> C. Defendant Roy Was Able to Maintain Complete Control Over the Company Even After the IPO
>
> 45. The IPO was structured in a way that gave Defendant Roy complete control of Switch, Inc. Rather than establishing a tax-advantaged REIT[3] (typical for Switch's peer companies), Defendants established Switch, Inc. as an umbrella partnership C-corporation—an ownership structure with Class A-C equity shares, super-voting rights and majority control by Roy, and a tax-receivable arrangement with its members. Thus, while investors in the IPO collectively share 100% of the economic interest in Switch, Inc., their Class A common stock yields only a 5.6% voting interest. Conversely, Defendant Roy's 42.9 million Class C shares, which have 10-1 voting rights, have no economic interest in Switch, Inc. but give Defendant Roy (and an affiliated entity of Defendant Roy) majority control with more than 67% voting power over Switch.
>
> D. The IPO Resulted in Financial Windfalls for Switch Executives
>
> 46. Switch's executives were handsomely rewarded for the completion of the IPO. For example, Defendant Roy received more than 28 times the compensation in fiscal 2017, the year of the IPO, than in 2016. In 2016,

> Defendant Roy received approximately $3.3 million in compensation while in 2017 he received a staggering $94.6 million in compensation. Likewise, Thomas Morton, the Company's President, General Counsel and Secretary, received more than $12 million in 2017 when he had only received $1.9 million in compensation in 2016. Additionally, following the IPO, Bloomberg valued Defendant Roy's 17.6% stake in the business at $875 million.

(ECF No. 48 at 11-12). These paragraphs do not relate to any element of Cai's claims or provide context to the case. A Section 15 claim relates to control over a liable person or entity at the time of the alleged securities violation. *See S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1087, 1098 (9th Cir. 2010); *Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1117–18 (D. Nev. 2014). Roy's control over Switch after the alleged violation is immaterial. In addition, the compensation for Switch personnel following the alleged violation has no bearing on the case. Allowing these paragraphs to remain in the amended complaint would force the parties to spend unnecessary time and resources on litigating these issues. Therefore, Paragraphs 45 (including Footnote 3) and 46 should be stricken.

The Court finds that Paragraphs 56 and 65 are material to Cai's claims. These paragraphs allege that,

> 56. After closing on August 13, 2018 at $13.98 per share, the Company's stock tanked $3.13 per share, or more than 22.3%, the following day to close on August 14, 2018, at $10.85 per share, on unusually heavy volume.
>
> 65. Outside of the Registration Statement, Switch management told investors that the Company could replicate key aspects of its business as it expanded into new markets. For instance, the Company stated that it had the ability to offer the same bandwidth resell services in other markets that it offered in Nevada. This was inaccurate at best. Switch's bandwidth resell relationship—under which it purchases bandwidth at below-market rates and passes some of those savings to its customers—was negotiated by Roy soon after taking ownership of the Enron facility and reflects the significant connectivity available at that specific location.

4

(ECF No. 48 at 15, 17-18). These paragraphs relate to whether the alleged misrepresentations and omissions in the registration statement were material, which is a requirement under 15 U.S.C. § 77k. Paragraph 56 alleges that when the true facts of Switch's business were disclosed during a press release and conference call in August 2018 (ECF No. 58 at 12), facts that Cai argues should have been disclosed in the registration statement, Switch's stock price fell dramatically. This tends to show that investors considered the information to be material. Paragraph 65 alleges that Switch reiterated the registration statement's misrepresentations and omissions in other conversations with investors. This tends to show that Switch considered the information to be material to investors. Therefore, Paragraphs 56 and 65 should not be stricken.

The Court finds that Footnotes 4 and 7 are immaterial to Cai's claims. These footnotes allege that,

> [4] To the chagrin of analysts and investors, Defendant Roy has never participated in an investor earnings call even though he is the CEO and controlling shareholder of Switch.
>
> [7] An August 13, 2018 Cowen report noted that the Company's "still weak disclosures limit transparency" and that, at "the same time, the CEO has not participated in an earnings call despite the fact the stock is down 33% since its October 2017 IPO (excluding the +20% sell-off in today's aftermarket) which in our view has further reduced transparency into the company's thinking."

(ECF No. 48 at 4, 15). Cai argues the footnotes provide context for the case because "it is more likely that a company with a habit of poor disclosures would have (1) misstated its strategy to begin with and then (2) inexpertly admit to the deception when pressured by analysts." (ECF No. 79 at 13). The Court is not persuaded by this argument. Cai's claims relate to Switch's registration statement, not Roy's alleged history of not participating in earnings calls or an analyst's interpretation of Switch's transparency. These footnotes are commentary rather than substantive allegations, and allowing them to remain in the amended

complaint would force the parties to spend unnecessary time and resources on litigating these issues. Therefore, Footnotes 4 and 7 should be stricken.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the Switch Defendants' Motion to Strike Allegations from Plaintiff's Amended Class Action Complaint for Violation of the Securities Laws Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 63) be GRANTED as to Paragraphs 45 (including Footnote 3) and 46 and Footnotes 4 and 7.

IT IS FURTHER RECOMMENDED that the Switch Defendants' Motion to Strike Allegations from Plaintiff's Amended Class Action Complaint for Violation of the Securities Laws Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 63) be DENIED as to Paragraphs 56 and 65.

IT IS SO RECOMMENDED.

DATED this 24th day of January, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE