ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: 702.330.4505
Facsimile: 702.825.0141
Email: andrew@mlolegal.com

*Liaison Counsel for Lead Plaintiff and the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MINGBO CAI, Individually and On Behalf of All Others Similarly Situated, | Case No.: 2:18-cv-01471-JCM-VCF |
| Plaintiff, | |
| v. | **STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |
| SWITCH, INC., ROB ROY, GABE NACHT, ZAREH SARRAFIAN, DONALD SNYDER, TOM THOMAS, BRYAN WOLF, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, BMO CAPITAL MARKETS CORP., WELLS FARGO SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES, JEFFERIES LLC, BTIG, LLC, RAYMOND JAMES & ASSOCIATES, INC., STIFEL, NICOLAUS & COMPANY, INC. and WILLIAM BLAIR & COMPANY, L.L.C., | |
| Defendants. | |

Stipulation and [Proposed] Order Regarding the Production of Electronically Stored Information

**1.    PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Action may call for the production of electronically stored information.  Additionally, the vast majority of the cost incurred and information produced in this matter will be by Switch.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding the Production of Discovery Material ("Stipulated Order").  The parties also acknowledge that given the cyber security, espionage, terrorism, and sabotage risks inherent in Switch's mission critical services, that Switch has the right to produce the materials in a manner that limits the unnecessary duplication, or digital proliferation and/or unauthorized disclosure of Highly Confidential Information, as that term is used in the Protective Order.  As such, the parties agree they may produce documents on site, for inspection, prior to reproduction, as well as redact Highly Confidential Information prior to production (e.g. as set forth in Exhibit B of the Protective Order).

**2.    DEFINITIONS**

2.1    <u>Action</u>: means the above-referenced action.

2.2    <u>Defendants</u>: means Switch Inc., Rob Roy, Gabe Nacht, Zareh Sarrafian, Donald Snyder, Tom Thomas, Bryan Wolf, Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BMO Capital Markets Corp., Wells Fargo Securities LLC, Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Jefferies LLC, BTIG, LLC, Raymond James & Associates, Inc., Stifel, Nicolaus & Company, Inc., and William Blair & Company, L.L.C.

2.3    <u>Document</u>: has the broadest possible meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).  The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.4    <u>Email</u>: means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

2.5    <u>ESI</u>: an abbreviation of "electronically stored information," which has the broadest possible meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A) and Federal Rule of Evidence 1001.

2.6    <u>Extracted Text</u>: means text extracted from a Native Format file and includes at

Stipulation and [Proposed] Order Regarding the Production of Electronically Stored Information

least all headers, footers, Document body information, and any hidden text, if available. The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers and Endorsements (except in the cases of redactions as detailed in Section 4.4).

2.7    Format: means the internal structure of a file, which defines the way it is stored and used.

2.8    Hard-Copy Document: means any document or thing discoverable under Federal Rule of Civil Procedure 26(b)(l) and Federal Rule of Civil Procedure 34 that cannot be characterized as ESI.

2.9    Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion. "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

2.9    Instant Messages: means real time communications sent via chat client or SMS, including but not limited to Skype for Business.

2.10    Load File: means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments, and a Document and information related to embedded content.

2.11    Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by

the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or Non-Custodial Data Source from which it was collected.   Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

2.12    <u>Native Format</u>: means the format of ESI in the application in which such ESI was originally created.

2.13    <u>Non-Custodial Data Source</u>: means a system or container that stores Hard-Copy Documents or ESI, but over which an individual custodian does not organize, manage, or maintain the Hard-Copy Documents or ESI in the system or container, such as an enterprise system or database.

2.14    <u>OCR</u>: means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

2.15    <u>Party</u>: means any party to the Action, including all of its officers, directors, and employees or any other person or entity that is served a subpoena pursuant to Federal Rule of Civil Procedure 45.

2.16    <u>Producing Party</u>: means any Party or third-party in the Action that produces Documents.

2.17    <u>Receiving Party</u>: means a Party in the Action to whom Documents are produced.

2.18    <u>Responsive Document</u>: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure and/or Court order.

2.19    <u>Email Thread</u>: means a single Email conversation that starts with an original Email (the beginning of the conversation), and includes all subsequent replies and forwards pertaining to

that original Email.

2.20    Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

**3.    SCOPE**

The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in this Action, to the extent available.  Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.

The production specifications in this Order apply to Documents that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced if the original production included substantially the same Metadata identified in this Order.  If such Documents originally were not produced with substantially the same Metadata identified in this Order, the Parties shall meet and confer to identify necessary additional fields and discuss an appropriate Metadata overlay or supplemental Metadata production for those Documents.  The Parties agree that this is not a request to produce the same ESI or Documents in more than one form; rather, it is a process for identifying supplemental information that does not require reproduction of previously produced Documents.

The Parties will endeavor to produce documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  The Parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.  Production is anticipated to be conducted on a rolling basis with Parties making reasonable efforts to expedite the process.  If either Party feels production has been unreasonably delayed, the Parties agree to confer via telephone or in person to reach a mutually agreeable consensus prior to court involvement.

**4.    PRODUCTION FORMAT**

4.1    Format Guidelines: The Parties shall, to the extent reasonably and technically possible, produce Hard Copy Documents or ESI according to the specifications provided in

Exhibit A.

4.2 De-Duplication: A Party is only required to produce a single copy of a responsive Document. Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians and non-custodial data sources of de-duplicated Documents in the Custodian field delimited by semicolons or in a MasterCustodian field delimited by semicolons (as set forth in Exhibit A). Moreover, (a) de-duplication shall be performed only at the Document family level[1] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; and (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email, Instant Messages, or Document even if they are exact duplicates of another Document in the production. The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

4.3 Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents but will produce the processed Document as a native overlay.

---

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family. For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical. If a Party de-duplicates globally, the Party shall identify the de-duplication priority order at the request of any other Party. To the extent any Party wishes to de-duplicate Emails in such a way as to eliminate earlier or incomplete chains of Email, the Parties shall confer in good faith about that request.

If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

4.4  <u>Documents to Be Produced Natively</u>: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, animation files, Power Point and other presentation files, and files that are not easily rendered in to TIFF format shall be produced in native format. If a Document to be produced in Native Format contains privileged information, the Document will be produced by producing the Document in TIFF format with redactions and OCR text to remove the privileged material from the searchable text. If excel files contains privileged information the parties may elect to redact the excel file natively so long as the redactions made are conspicuous. Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Section 4.10, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the associated TIFF placeholder in no less than 10-point font. Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number, *e.g.*, SWITCH0000000001_CONF.xlsx. For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

4.5  <u>Embedded Files</u>: OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent Document. Images embedded in Emails shall not be extracted and shall not be produced separately.

4.6  <u>Databases</u>: Non-privileged raw data kept in enterprise databases (such as Oracle or SQL databases) that are maintained in the normal course of business will be produced in an

electronic format. To the extent such databases exist, raw data from those types of databases will be produced in database or delimited text file format, as database reports, or, where necessary, the Parties will discuss appropriate procedures and method of production.

4.7 <u>Production of Documents in Native Format</u>: Each Party reserves the right to request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need and limited burden, such requests will not be denied. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.8 <u>Attachments</u>: The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, work-product protection, immunity, or privacy laws.

4.9 <u>Unitization</u>: In scanning paper Documents, each page of paper should be output to a single page TIFF file. Distinct, logical document breaks should be defined as such in a standard Load File as described in Exhibit A. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data Load File at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents correctly.

4.10 <u>Document Numbers and Confidentiality Designations for TIFF Images</u>: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least ten (10) digits electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Document Number shall be burned on the

lower right hand corner of the Document. Bates numbers and any confidentiality designation should not be included in the Extracted Text of ESI. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Stipulated Protective Order filed with the Court will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font. The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "SWITCH0000000001"). There should not be an underscore or dash between the prefix and the Document Number. Each Party's Document numbering scheme shall use the unique identifying name agreed upon by the Parties.

4.11 Metadata Fields and Processing: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. The Parties are not obligated to populate any of the fields in Exhibit A manually if such fields cannot be extracted or generated from a Document and its context in the source data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue.[2] Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020, 254, and 174 delimiters for column break, text qualifier, and newline. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all Metadata fields will be provided and will include all non-privileged non-redacted data. Redacted Documents shall be identified as such in the Load File provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible. If the

[2] In the case of Documents that were scanned from paper, the HashValue field is not required.

Producing Party is unable to produce Metadata for a particular field or ESI Document, it will provide an explanation of that inability with its Document production. The Parties shall then meet and confer to attempt to resolve the problems.

4.12    Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Document Number ranges of the Documents in that production (*e.g.*, "Plfs' Production January 1, 2019, SWCHPLF0000000123-SWCHPLF0000000456"). To the extent that the Production Media includes any confidential information protected under any Stipulated Protective Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Protective Order. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production. Productions should be accompanied by a cover letter identifying the custodians whose files are present in the production, if applicable, or otherwise describing the source(s) of the Documents present in the production.

4.13    Original Documents: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated Metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation. Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

4.14   <u>Color</u>: Paper Documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the Document or ESI shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.

4.15   <u>Lost, Destroyed, or Irretrievable ESI</u>: If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the places in which such ESI is kept.  The Parties shall negotiate in good faith concerning the production of any such ESI.  Provided that the parties comply with this Order, the Parties will not seek sanctions against another Party for failing to produce ESI lost inadvertently.

## 5.   PROCESSING SPECIFICATIONS

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, tracked changes, comments, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.  Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Eastern Standard Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

**6.     CONFIDENTIALITY**

Documents produced in the Action shall be subject to the terms of the Stipulated Protective Order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**7.     PRIVILEGE LOG**

The Parties agree to provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) as soon as possible, but no later than within forty-five (45) days of the last production or a mutually agreed upon date.  If a Party anticipates that it will be unable to meet this deadline, it shall inform the other Parties to this Action as soon as practicable, and the Parties will agree to negotiate a reasonable schedule for the exchange of such privilege log on a rolling basis. Any claim that produced Documents are covered by the attorney-client privilege, work product doctrine or other applicable privilege or immunity ("Privileged Material"), any belief that such Documents are not Privileged Materials and any challenge to such claim shall be subject to the terms of the Stipulated Protective Order agreed upon by the Parties, and entered by the Court.  The Parties shall have no obligation to log communications involving counsel that post-date October 12, 2018.  Furthermore, activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Federal Rule of Civil Procedure 26(b)(3)(A)-(B) and need not be included in the privilege log.

For each document withheld or redacted, the privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.  For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an

asterisk next to each attorney's name). The parties reserve the right to meet and confer to determine whether a categorical privilege log is appropriate for this Action.

Any e-mail chain (*i.e.*, a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most e-mail in the chain that is withheld or redacted. The Parties shall not be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

Relatedly, each member of a family (*i.e.*, e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be identified on the log separately.

This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if the Producing Party discloses information in connection with the pending litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture--in this or any other action--of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. This Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

Each party is entitled to decide, in its sole discretion, the appropriate degree of care to exercise in reviewing materials for privilege. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders that disclosure of Protected Information in discovery conducted in this litigation shall not waive any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

A Producing Party must notify the party receiving the Protected Information ("the Receiving Party"), in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon receipt of notification, the Receiving Party shall immediately take

Stipulation and [Proposed] Order Regarding the Production of Electronically Stored Information

all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

This Order shall be interpreted to provide the maximum protection allowed to the Disclosing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence. Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Disclosing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material. Any Protected Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

**8.    EMAIL THREADING**

The Parties may use email thread suppression to reduce duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production.

**9.    TECHNOLOGY ASSISTED REVIEW**

The Parties agree that if Predictive Coding or Technology Assisted Review ("TAR") will be employed to prioritize Documents for review and production, that the Parties will meet and confer in good faith regarding the adoption of a separate agreement, a Technology Assisted

Review Protocol, to define and agree upon the process, benchmarks, and reporting obligations for the use of TAR.

## 10.    LIMITS OF ORDER

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown; provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute. Nothing herein shall be construed as a representation that a party is in possession, custody or control of any certain type of document or ESI, or expands any Party's discovery obligations as provided for in the Federal Rules of Civil Procedure. Further, nothing herein shall alter or limit rights provided by the Federal Rules of Procedure or otherwise to object to or seek to limit any discovery, including but not limited to the right to object to discovery that imposes an undue burden on a party or to seek to shift or impose costs on the requesting Party for any such discovery.

**IT IS SO ORDERED:**

Dated:    3-3-2020

_____
Honorable Cam Ferenbach
United States Magistrate Judge

WE SO MOVE and agree to abide by the terms of this Order.

Dated: March 2, 2020                    GLANCY PRONGAY & MURRAY LLP

By: *s/ Leanne H. Solish*
Robert V. Prongay, Esq.
Joshua L. Crowell, Esq.
Casey E. Sadler, Esq.
Leanne H. Solish, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

*Lead Counsel for Lead Plaintiff and the Class*

MUEHLBAUER LAW OFFICE, LTD.
Andrew R. Muehlbauer, Esq.
7915 West Sahara Ave., Suite 104
Las Vegas, NV 89117

*Liaison Counsel for Lead Plaintiff and the Class*

Dated: March 2, 2020                    LATHAM & WATKINS LLP

By: *s/ Andrew R. Gray*
Michele D. Johnson
Andrew R. Gray
650 Town Center Dr.
Costa Mesa, CA 92626

LATHAM & WATKINS LLP
Joshua G. Hamilton
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

LATHAM & WATKINS LLP
Kendall M. Howes
355 S Grand Ave., Suite 100
Los Angeles, CA 90071

PISANELLI BICE PLLC
Todd L. Bice, Esq., Bar No. 4534
Ava M. Schaefer, Esq., Bar No. 12698
400 South 7th Street, Suite 300
Las Vegas, NV 89101

*Attorneys for Defendants Switch, Inc., Rob Roy, Gabe Nacht, Zareh Sarrafian, Donald Snyder, Tom Thomas, and Bryan Wolf*

Dated: March 2, 2020

GREENBERG TRAURIG, LLP

By: *s/ Daniel J. Tyukody*
Daniel J. Tyukody, Esq.
1840 Century Park East, Suite 1900
Los Angeles, Ca 90067-2121

GREENBERG TRAURIG, LLP
Mark E. Ferrario, Esq. (Bar No. 1625)
Christopher R. Miltenberger (Bar No. 10153)
10845 Griffith Peak Drive
Las Vegas, NV 89135

*Attorney For Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BMO Capital Markets Corp., Wells Fargo Securities, Llc, Citigroup Global Markets Inc., Credit Suisse Securities, Jefferies LLC, BTIG, LLC, Raymond James & Associates, Inc., Stifel, Nicolaus & Company, Inc., and William Blair & Company, L.L.C.*

**1.     PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI:

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields. For all DAT files: if no foreign language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be foreign language Documents, the text encoding must be in Unicode.

- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

**2.     IMAGES**

- Produce Documents in Single Page Group IV TIFF black and white files.

- Image Resolution of at least 300 DPI.

- If either Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file.

- File Naming Convention: Match Bates number of the page.

- Insert placeholder image for files produced in Native Format (see Paragraph 4.4.).

- Original Document orientation or corrected orientation shall be retained.

**3.     SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in Native Format, as specified in Paragraph 4.4.

- If redactions are required, see production requirements specified in Paragraph 4.4.

**4.     FULL TEXT EXTRACTION/OCR**

- Where available, produce full Extracted Text for all file types (Redacted text will not be produced). Redacted Documents should be re-OCRed and the redacted text should be produced.

- Produce OCR text output for any paper Document.

- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).

- *Production format*: Single text file for each Document, not one text file per page.

- *File Naming Convention*: Match Beg Bates Number.

**5. ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- <u>Source</u>: Name of Party Producing the Document.

- <u>BegBates</u>: Beginning Bates Number.

- <u>EndBates</u>: Ending Bates Number.

- <u>BegAttach</u>: Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value.

- <u>EndAttach</u>: Ending Bates number of the last Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.

- <u>Custodian</u>: Name of the Custodian of the Document Produced.

- <u>Duplicate Custodians</u>: Names of all custodians who and non-custodial data sources which had a copy of a Document that was removed through the de-duplication process, if applicable.

- <u>FileName</u>: Filename of the original source ESI as stored by the custodian.

- <u>NativeLink</u>: Path and filename to produced Native Format file (see Paragraph 4.4).

- <u>EmailSubject</u>: Subject line extracted from an Email message.

- <u>Title</u>: Title field extracted from the Metadata of a non-Email Document.

- <u>Author</u>: Author field extracted from the Metadata of a non-Email Document.

- <u>From</u>: From field extracted from an Email message, including both the display name and the SMTP address.

- <u>To</u>: To or Recipient field extracted from an Email message, including both the display name and the SMTP address.

- <u>Cc</u>: CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.

- <u>BCC</u>: BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.

- <u>DateSent</u>: Sent date and time of an Email message (mm/dd/yyyy format).

- <u>TimeSent</u>: Sent time of an Email message or Instant Message (hh:mm:ss format).

- <u>TimeZoneProcessed</u>: The originating time zone of the Document.

- <u>DateCreated</u>: The origination date of the Document (mm/dd/yyyy format).

- <u>DateLastModified</u>: Last modification date and time (mm/dd/yyyy format).

- <u>PageCount</u>: The number of pages of the Document, excluding the pages of Documents in the same family.

- <u>[MD5/SHA1]HashValue</u>: MD5 or SHA-1 Hash Value, but please specify using field name.

- <u>File Extension</u>: File extension of Document (.msg, .doc, .xls, etc.).

- **TextLink**: File path to Extracted Text/OCR File.

- **Confidentiality**: "Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.

- **Attach Count**: Number of attached files.

- **Message-ID**: The Outlook Message ID assigned by the Outlook mail server, if applicable.

- **Reference Chain/Conversation Index**: The Outlook message "Reference Chain," if applicable.

- **Document Type**: Descriptor for the type of Document based on file extension.

- **Importance**: High Importance – indicates priority E-mail.

- **Redacted (Y/N)**: Whether the Document contains redactions.

- **Redaction Reason**: Basis of redaction. If more than one, separate reasons by semi-colons.

- **Embedded Source**: The _Document_ Number of the source file from which the embedded file was extracted (if applicable).

**6.      DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching.

- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

Stipulation and [Proposed] Order Regarding the Production of Electronically Stored Information

1  **<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

2      I, the undersigned say:

3      I am not a party to the above case, and am over eighteen years old.  On March 2, 2020, I

4  served true and correct copies of the following document, by posting the document electronically to

5  the ECF website of the United States District Court for the District of Nevada, for receipt

6  electronically by the parties listed on the Court's Service List.

7      I affirm under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on March 2, 2020, at Los Angeles, California.

10                                *s/ Leanne H. Solish*

11                                Leanne H. Solish