UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MINGO CAI,<br><br>                Plaintiff(s),<br><br>    v.<br><br>SWITCH, INC., et al.,<br><br>                Defendant(s). | Case No. 2:18-CV-1471 JCM (VCF)<br><br>ORDER |

Presently before the court is a motion for judgment on the pleadings by defendants Switch, Inc. ("Switch" or the "company"), Rob Roy, Gabe Nacht, Zareh Sarrafian, Donald Snyder, Tom Thomas, and Bryan Wolf's (the "individual Switch defendants"). (ECF No. 106). Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, BMO Capital Markets Corp., Wells Fargo Securities, LLC, Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Jefferies LLC, BTIG, LLC, Raymond James & Associates, Inc., Stifel, Nicolaus & Company, Inc., and William Blair & Company, L.L.C. (collectively, "the underwriter defendants") joined the foregoing motion. (ECF Nos. 109). Lead plaintiff Oscar Farach opposed the motion, (ECF No. 112), to which Switch and the individual Switch defendants replied, (ECF No. 116). The underwriter defendants joined in reply. (ECF No. 117).

**I.     Background**

This case arises from Switch's initial public offering ("IPO") in 2017. (ECF No. 1). Plaintiffs allege that Switch made "false and misleading" statements in connection to its IPO. (ECF No. 58). The underlying complaint brings two causes of action: (1) violations of section 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77k, and (2) violations of section 15 of the Securities Act, 15 U.S.C. § 77o. (ECF No. 58). Following this court's decision on

**James C. Mahan**
**U.S. District Judge**

defendants' motion to dismiss, plaintiffs' only remaining basis for liability under section 11 involves facts surrounding Switch's "hybrid cloud solutions sales strategy." (ECF No. 92).

The amended complaint alleges that, before the IPO, Switch began changing its sales strategy to focus on hybrid cloud solutions, which would "allow[] companies to move larger and more mission critical technology environments to [Switch's] differentiated cloud campus locations." (ECF No. 58). After Switch's IPO on October 5, 2017, its stock price decreased, and the instant matter and related state court cases were initiated between April 20, 2018 and June 11, 2018. (*Id.*). On August 13, 2018, in an official press release, defendant Rob Roy, CEO and Chairman of Switch, attributed the company's decreased revenue to its shift in sales strategy, which "extended the sales timelines." (*Id.*). By the next day, Switch's stock price plummeted by an additional 22.3%. (*Id.*). Neither the strategy nor its risks were disclosed for the IPO. (*Id.*).

## II. Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). Rule 12(c) is "functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (internal citation and quotation omitted). Therefore, "judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (internal quotations and citations omitted). To proceed, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" may not be dismissed under Rules 12(b)(6) or 12(c). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted). A court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

### III. Discussion

In accordance with Federal Rule of Evidence 201, this court takes judicial notice of Switch, Inc.'s stock price chart from October 6, 2017, to October 12, 2018, as requested by defendants. (ECF No. 107 & 110). A public company's historical stock prices are judicially noticeable, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017). As a "matter[] of public record," Fed. R. Evid. 201, this court also takes judicial notice of the complaints before the Eighth Judicial District for the State of Nevada ("Nevada state court") referenced by defendants as exhibits, (ECF No. 107). However, this court does not take notice of the "disputed facts contained" therein. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

#### A. Section 11 Claim

Section 11 of the Securities Act allows suit when a registration statement "contain[s] an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). This court already found that these elements were properly pleaded. (ECF No. 92). The instant motion instead rests on the Securities Act's mandate on available damages:

> The suit authorized under subsection (a) of this section may be to recover such damages as shall represent *the difference between the amount paid for the security* (not exceeding the price at which the security was offered to the public) *and* (1) the *value thereof as of the time such suit was brought*, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. § 77k(e) (emphasis added).

However, "if the defendant proves that any portion or all of such damages represents other than the depreciation in value . . . resulting from such part of the registration statement, with respect to which his liability is asserted, . . . such portion of or all such damages shall not be recoverable." *Id.* This statutory principle is known as the "negative causation defense," and

defendants hold a "heavy burden" of "prov[ing], as a matter of law, that the depreciation of the value of [the security] resulted from factors other than the alleged false and misleading statements." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013).

This court finds in defendants' favor. Here, "value thereof as of the time such suit was brought" is appropriately measured by market price on the date of the first-filed complaint. Thus, the negative causation defense prevents plaintiffs' claim from moving forward.

1. *Defining "value" under 15 U.S.C. § 77k(e)*

Damages under section 11 are limited by statutory formula. *See* 15 U.S.C. § 77k(e); *Hildes*, 734 F.3d at 860. The first variable of that formula is always "amount paid for the security," capped by offering price. 15 U.S.C. § 77k(e). The second variable is one of three options. *See id.* Here, the relevant option is "value thereof as of the time such suit was brought." *Id.* Section 11 plaintiffs may recover the difference between these two figures. *Id.*

The statute uses the unambiguous phrase, "*amount paid* for the security," to describe the initial component of the statute's damages equation. 15 U.S.C. § 77k(e) (emphasis added). The parties do not dispute the relevance of Switch's IPO share price, $17.00, as to this factor. (ECF Nos. 106, 112, & 116).

However, the parties diverge on the next component of this analysis: "the *value* thereof as of the time such suit was brought." *Id.* Plaintiffs argue that "value" means the "security's *true value* after the alleged misrepresentations are made public." (ECF No. 112). Defendants argue that this provision means *market price* of the stock at the time that the first section 11 claim was brought against Switch. (ECF No. 106). The stock's market price was $14.55 on April 20, 2018, when *Martz v. Switch, Inc. et al.*, Case No. A-18-773212-B (the first of four related state court cases), was filed in Nevada state court. (*Id.*). Alternatively, the stock's market price was $12.96 on June 11, 2018, when the instant matter was filed before this court. (ECF Nos. 1, 106, & 112). For the sake of clarity, this court finds that the latter date—June 11, 2018 as the initial complaint's filing in the instant matter—applies here as "the time such suit was brought." 15 U.S.C. § 77k(e).

In assessing the meaning of "value," this court is persuaded by the rationale that, "when market value is available and reliable, 'market value will always be the primary gauge of an

James C. Mahan
U.S. District Judge

- 4 -

enterprise's worth.'" *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995) (*citing Mills v. Electric Auto–Lite Co.,* 552 F.2d 1239, 1247 (7th Cir.), *cert. denied,* 434 U.S. 922 (1977)) (emphasis added); *see also In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1202 (9th Cir. 2002) (stating in dicta that the "value . . . as of the time such suit was brought" is established by the stock price on "the date the Section 11 claim was filed"). With that said, this court acknowledges limited situations where market price is not appropriate. The statute distinctly uses the term "value" alongside "amount paid" and "price," lending credence to the interpretation that "value" is not one and the same as "price" or "market price." 15 U.S.C. § 77k(e). Plaintiffs note circumstances where they may have "alleged facts showing that the price of the stock is not an indicator of its value, the determination of value becomes a fact-intensive inquiry." (ECF No. 112). However, those circumstances are "unusual and rare." *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987). One such extraordinary example is "fraud on the market," where false statements artificially inflated the price of the stock. *Id.* (*citing Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 415 (N.D. Ill. 1984)). Plaintiff has failed to allege such an "unusual and rare situation." (ECF No. 112). Ultimately, the plaintiffs' premise—that "value" means the "security's true value after the alleged misrepresentations are made public"—is difficult to square with the statute's language on timing. (*Id.*). This court would need to divine the price of Switch's stock in an alternate reality where the relevant information was divulged. Many extraneous variables may impact such a hypothetical, which is why the inquiry is limited to situations so "unusual and rare" as to create the present dearth of applicable caselaw. Indeed, the statutory formula on damages exists to avoid this breed of judicial analysis.

These limitations on plaintiffs' damages greatly impact this court's following analysis. 15 U.S.C. § 77k(e). As it stands, plaintiffs' only remaining basis for liability rests on a depreciation of value that occurred on August 13, 2018.

    2. *The negative causation defense*

The negative causation defense, also known as the loss causation defense, has been analogized to the concept of proximate cause. *In re Omnicom Grp., Inc. Sec. Litig.,* 597 F.3d 501, 510 (2d Cir. 2010). Born out of the statute's plain language, this defense prevents a devaluation

of stock prior to the disclosure of the truth at issue from being attributed to defendants. *See Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 68 F. Supp. 3d 486, 492 (S.D.N.Y. 2014), *aff'd sub nom. Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85 (2d Cir. 2017). However, overcoming a negative causation defense requires merely that "the misrepresentation touches upon the reasons for an investment's decline in value." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994).

This court finds that defendants have satisfied their "heavy burden" of "prov[ing], as a matter of law, that the depreciation of the value of [the security] resulted from factors other than the alleged false and misleading statements." *Hildes*, 734 F.3d at 860. Here, the relevant "depreciation in value" is the difference between the market price of the stock from the date of the IPO, October 5, 2017, and the market price of the stock, i.e. value, at "the time such suit was brought" on June 11, 2018. This depreciation in value was indisputably *not* caused by Switch's statement on hybrid cloud solutions on August 13, 2018. Indeed, plaintiffs note the widespread surprise of this announced shift in strategy. (ECF No. 112). As pled, it is plausible that the announcement did cause the ensuing 22.3% decrease in share price on August 14, 2018, (ECF No. 58), but plaintiffs' claim is expressly limited by section 11's damage mechanisms, 15 U.S.C. § 77k(e).

### B. Section 15 Claim

Due to the failure of plaintiff's section 11 claim, it follows that plaintiff's section 15 claim fails as well. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) ("[S]ection 15 . . . require[s] underlying primary violations of the securities laws."); *see also In re Anchor Gaming Sec. Litig.*, 33 F. Supp. 2d 889, 892 (D. Nev. 1999) ("Violation of section 15 is predicated upon violation of section 11.").

### IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for judgment on the pleadings (ECF No. 106) be, and the same hereby is, GRANTED.

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that plaintiff's claims be, and the same hereby are, DISMISSED with prejudice.

The clerk is ordered to close the case accordingly.

DATED July 10, 2020.

_____
UNITED STATES DISTRICT JUDGE